THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |
|---|---|
| EUSTOLIA GAYTAN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>LOWE'S HOME CENTERS, LLC,<br><br>　　　　　Defendant. | CASE NO. C24-0470-JCC<br><br>ORDER |

This matter comes before the Court on Defendant's motion for summary judgment (Dkt. No. 20). Having thoroughly considered the briefing and the relevant record, the Court finds oral argument unnecessary[1] and hereby GRANTS the motion for the reasons stated herein.

I. **BACKGROUND**

In May of 2021, Plaintiff Eustolia Gaytan sustained a broken wrist and foot after she slipped and fell in Defendant's parking lot while returning her shopping cart. (Dkt. No. 21 at 28,

---

[1] Defendant requested oral argument on its motion for summary judgment. (Dkt. No. 20 at 1.) The Court deems such argument unnecessary because the parties have had a full opportunity to brief the motions. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (oral argument not required if parties are given adequate opportunity to submit papers in support of and/or opposition to the motion). Moreover, because the Court is granting Defendant's motion, Defendant cannot show prejudice from failing to present its arguments orally. *See Jasinski v. Showboat Operating Co.*, 644 F.2d 1277, 1280 (9th Cir. 1981) (requiring a showing of prejudice).

ORDER
C24-0470-JCC
PAGE - 1

31, 41.) Plaintiff attributes the slip to "some sort of sand . . . that got spilled" in the area where she fell, (*id*. at 28), whereas her husband attributes it to gravel, (*see id*. at 45–46). Neither one knows how long the sand or gravel had been sitting on the ground. (*Id*. at 31, 46.) And Defendant did not observe any sand, gravel, or other trip hazards during its inspection of the area earlier that day. (*Id*. at 19.)

Plaintiff sued Defendant for negligence in King County Superior Court. (*See generally* Dkt. No. 1-1.) Defendant timely removed to this Court under diversity jurisdiction. (*See generally* Dkt. No. 1.) Now, Defendant moves for summary judgment, arguing that Plaintiff cannot prove (1) that there was, in fact, any sand or gravel that caused her to slip, and (2) that Defendant had notice of the substance or should have foreseen its existence (if it did, in fact, exist). (*See* Dkt. No. 20 at 4–10.) As evidentiary support, Defendant attaches a copy of its routine inspection report, excerpts from Plaintiff's and her husband's depositions, as well as video and photo evidence. (*See generally* Dkt. Nos. 21, 24, 25.) Plaintiff opposes but provides only a legal opinion (rather than factual evidence) in support. (*See generally* Dkt. No. 26.)[2] It is with this threadbare record that the Court addresses Defendant's motion (Dkt. No. 20).

## II. DISCUSSION

### A. Legal Standards

#### 1. Summary Judgment

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit," and a dispute of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

---

[2] (*See also* Dkt. No. 26-1) (Plaintiff's counsel's declaration attaching only a legal opinion from *Galassi v. Lowe's Home Centers, LLC*, 565 P.3d 116 (Wash. 2025)).

1   (1986) (quotation marks omitted). The Court then views the facts in the light most favorable to
2   the nonmoving party and resolves any ambiguity in that party's favor. *See Bator v. Hawaii*, 39
3   F.3d 1021, 1026 (9th Cir. 1994). The Court may not, however, make credibility determinations
4   or weigh evidence. *See Anderson*, 477 U.S. at 248–49, 255. Moreover, conclusory, non-specific
5   statements in affidavits are not sufficient to raise a genuine dispute, and the Court will not
6   presume "missing facts." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).
7   Ultimately, summary judgment is appropriate against a party who "fails to make a showing
8   sufficient to establish the existence of an element essential to that party's case, and on which that
9   party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

       2.     <u>Negligence</u>

Under Washington law, to succeed on a negligence claim, the plaintiff must prove the following: (1) the defendant owed a duty to the plaintiff ("duty"); (2) the defendant breached that duty ("breach"); (3) the plaintiff sustained an injury ("harm"); and (4) the defendant's breach caused the plaintiff's injury ("causation"). *See Johnson v. Liquor & Cannabis Bd.*, 486 P.3d 125, 130 (Wash. 2021) (citing *Tincani v. Inland Empire Zoological Soc'y*, 875 P.2d 621, 624 (Wash. 1994)). In the context of premises liability, that translates to the principle that "[b]usiness proprietors must 'exercise reasonable care to protect' against 'physical harm caused to their [customers] by a condition on the land.'" *Galassi v. Lowe's Home Centers, LLC*, 565 P.3d 116, 122 (Wash. 2025) (quoting *Johnson*, 486 P.3d at 131). Nevertheless, "business proprietors are not strictly liable for all injuries to their customers;" rather, the customer still bears the burden of proving the elements of a negligence action. *Id*.

Defendant argues that Plaintiff cannot present any evidence whatsoever to satisfy the breach or causation elements. (*See generally* Dkt. Nos. 20, 28.) The Court therefore takes each element in turn.

ORDER
C24-0470-JCC
PAGE - 3

### B. There is a Genuine Dispute of Material Fact as to the Existence of an Unsafe Condition

"The first step toward proving breach is to produce evidence from which it can be inferred that an unsafe condition existed." *Watters v. Aberdeen Recreation, Inc.*, 879 P.2d 337, 339 (Wash. Ct. App. 1994). In other words, inherent in the breach element is the existence of an unsafe, hazardous, or dangerous condition. *See id*. Here, Defendant argues that the Court should enter summary judgment in its favor because no hazardous or unsafe condition ever existed and Plaintiff cannot present any evidence to the contrary. (*See* Dkt. Nos. 20 at 4–7, 28 at 1–3.)

In support, Defendant submits video and photographical evidence of the area where Plaintiff slipped at that time. (*See generally* Dkt. Nos. 24, 25.) It then contends that, whatever the visual evidence *does* show, it *does not* include the existence of a dangerous substance. (*See* Dkt. No. 20 at 4–5.) And sure enough, it is difficult to see from the visual evidence what exactly Plaintiff may have slipped on. But that is not conclusive evidence that the substance did not exist. To the contrary, both Plaintiff and her husband have testified to the existence of some sand or gravel in the area where Plaintiff fell. (*See* Dkt. No. 21 at 28–29, 45, 47.) Without considering the weight of this testimony, the Court finds that Plaintiff has sufficiently demonstrated a genuine dispute of material fact as to the existence of an unsafe condition. Moreover, Plaintiff challenges the accuracy of Defendant's evidence. She contends that the purported sand or gravel does not appear in the visual evidence because it "is not that detailed," and points to instances where the visual evidence lacks other minute details (such as leaf shapes or shopping cart wheels). (*See* Dkt. No. 26 at 2.) This demonstrates a genuine issue as to how much *weight* to give to the visual evidence—an issue that only the factfinder may resolve. Thus, it is enough to convince the Court that Defendant's visual evidence is not conclusive proof of the lack of an unsafe condition.[3]

---

[3] On this point, Defendant's reliance on *Scott v. Harris*, 550 U.S. 372, 379 (2007), (*see* Dkt. No. 20 at 4), is unavailing. In *Scott*, a case alleging use of excessive force during a high-speed chase, the Supreme Court held that the lower court erred in adopting the plaintiff's version of the events at summary judgment when it was "blatantly contradict[ed]" by videotape evidence in the record. *Scott*, 550 U.S. at 381. The lower courts had relied on the plaintiff's assertions that he posed

Defendant's reliance on *Watters* does not convince the Court otherwise. In *Watters*, the plaintiff's testimony demonstrated an unequivocal lack of personal knowledge regarding the unsafe condition, including an inability to identify the "foreign substance" that caused her slip and fall. 879 P.2d at 338–40. Indeed, during deposition, the plaintiff testified that she "ha[d] no idea" what the "foreign substance" was. *Id*. at 338. She also conceded she did not inspect the area after and was unaware of anyone else finding any substance on the floor. *See id*. Most importantly, she was her only source of evidence, as the court found her expert's testimony inadmissible. *See id*. at 340. In turn, the defendant was prepared to present three other witnesses who would testify, based on their own personal knowledge, that no unsafe condition existed. *See id*. at 340. These factors, together, led the appellate court to affirm the lower court's grant of summary judgment in favor of the defendant based on the plaintiff's inability to show an unsafe condition. *See id*.

In contrast, here, at minimum and as mentioned, Plaintiff and her husband have both identified the substance as some sort of sand or gravel. (*See* Dkt. No. 21 at 28–29, 45, 47.) They are therefore capable of testifying as to the existence of an unsafe condition. Thus, a genuine issue of fact exists on this issue.

---

"little, if any, actual threat" to the public because he had "control of his vehicle" and "slowed for turns and intersections." *Id*. at 378–79. However, upon review of the videotape evidence, the Supreme Court found that the videotape "t[old] quite a different story." *Id*. at 379. That is, it showed the plaintiff "racing down narrow, two-lane roads . . . at speeds that are shockingly fast," "forc[ing] cars traveling in both directions to their respective shoulders to avoid being hit," and "run[ning] multiple red lights." *Id*. In other words, plaintiff's assertions were "so utterly discredited by the record that no reasonable jury could have believed him." *Id*. The Supreme Court therefore reversed the lower courts' denial of summary judgment and concluded that the deputy's actions in chasing down the plaintiff did not violate the Constitution.

The visual evidence in the case at bar is not nearly so contradictory as to "utterly discredit" Plaintiff's assertions. Defendant argues that the video shows Plaintiff falling "due to her inertia"—and not due to any substance—when she "flung the cart." (Dkt. No. 20 at 7.) This is certainly a reasonable inference to draw from the video. But it is also reasonable to infer that Plaintiff slipped on sand or gravel—granular substances that might not appear in the video taken from a bird's eye view—while pushing her cart, thus causing her to slip. Regardless, these are not inferences for the Court to draw; rather, they are for the reasonable factfinder to decide at trial. *See Anderson*, 477 U.S. at 248–49, 255.

ORDER
C24-0470-JCC
PAGE - 5

### C.    Plaintiff Lacks Evidence to Demonstrate the Applicability of the *Pimentel* Exception

Assuming an unsafe condition existed, the parties' next dispute arises out of the causation element—specifically, proximate cause. In general, a plaintiff may show proximate cause by demonstrating that an unsafe condition on the premises "was caused by the proprietor or his employees, or [that] the proprietor had *actual or constructive notice* of the unsafe condition." *Tavai v. Walmart Stores, Inc.*, 307 P.3d 811, 816 (Wash. Ct. App. 2013) (emphasis added) (citing *Fredrickson v. Bertolino's Tacoma, Inc.*, 127 P.3d 5, 8 (Wash. Ct. App. 2005)). Thus, imbued in the proximate cause element is a notice requirement. *See Galassi*, 565 P.3d at 122.

Under the traditional notice rule, a customer must prove that the business proprietor had actual or constructive notice of the unsafe condition. *Id*. The idea is that dangerous conditions are "somewhat out of the ordinary." *Id*. (quoting *Pimentel v. Roundup Co.*, 666 P.2d 888, 892 (Wash. 1983)). As such, the traditional notice rule affords the proprietor "reasonable time, under the circumstances, to discover and correct" unsafe conditions. *Id*.

Defendant contends that Plaintiff cannot provide evidence of actual or constructive notice. (Dkt. No. 20 at 7.) Plaintiff does not refute this contention.[4] (*See generally* Dkt. No. 26.) Instead, Plaintiff relies on an important caveat to the traditional notice rule—the reasonable foreseeability exception (also commonly known as the *Pimentel* exception). (*See* Dkt. No. 26 at 2–3.) This exception arises out of the understanding that there are certain instances where a business's "operating methods . . . are such that dangerous conditions are continuous or easily foreseeable." *Pimentel*, 666 P.2d at 892 (internal quotations omitted). As such, in lieu of demonstrating actual or constructive notice, a plaintiff may prove that the defendant had notice

---

[4] Nor can she, as the inspection report clearly shows that Defendant did not find any unsafe conditions in the parking lot the morning of the incident, thus refuting actual notice. (*See* Dkt. No. 21 at 19.) And Plaintiff and her husband both testify that they do not know how long the purported sand or gravel was on the ground for, (*id*. at 31, 46), thus failing to show constructive notice. *See Tavai*, 307 P.3d at 816 ("Constructive notice arises where the condition has existed for such time as would have afforded the proprietor sufficient opportunity, in the exercise of ordinary care, to have made a proper inspection of the premises and to have removed the danger.").

of the unsafe condition by the very nature of its business and methods of operation, if such circumstances render the unsafe condition reasonably foreseeable. *See id*. at 893. That said, at a minimum, the plaintiff must still demonstrate that it was reasonably foreseeable for an unsafe condition to exist *in the particular location* where the accident occurred. *Tavai*, 307 P.3d at 816. Whether or not the *Pimentel* exception applies is therefore, necessarily, a fact-intensive inquiry. *See Galassi*, 565 P.3d at 124.

For instance, in *Johnson*, the Washington high court found that the trial court correctly denied the defendant's motion for judgment as a matter of law under the reasonable foreseeability exception because the record contained substantial evidence of the unsafe condition (*i.e.*, a dangerously slippery entryway). 486 P.3d at 134–35. In so finding, the court pointed to (1) the defendant's policy of putting out a "slippery when wet" sign whenever it rained or when the floor had been recently mopped, (2) the store clerk's testimony that rain always brought in customers with wet and muddy footprints, and (3) his testimony that "people entering a store on a rainy day is an inherent mode of operation" for the defendant. *Id*. at 135. And though there was also evidence in the record to contradict the reasonable foreseeability exception, there was also enough to uphold the jury verdict in the plaintiff's favor with respect to the exception's applicability. *See id*. at 129, 135.

In contrast, in *Tavai*, the court found that plaintiff Tavai failed to present sufficient evidence from which a jury could reasonably find that the *Pimentel* exception applied because her evidence did not show a relationship between Walmart's mode of operation and the wet floor on which she slipped. 307 P.3d at 816. For instance, "[w]hile Tavai presented evidence that other people slipped in the store in the past, she did not provide evidence that other people slipped in the particular area she slipped in." *Id*. Similarly, while Tavai relied on "the hazard that usually arises from customers unloading groceries" at the check-out counter, she was also 15 feet away from the check-out counter when she slipped, so that particular hazard was not present in her situation. *Id*. Accordingly, Tavai's purported evidence failed to raise a genuine dispute as to

whether the *Pimentel* exception applied, and the court affirmed the trial court's dismissal of Tavai's claims at summary judgment. *See id*.

Likewise, in *Ingersoll v. DeBartolo, Inc.*, the court found that plaintiff Ingersoll was not entitled to the *Pimentel* exception at summary judgment because "[t]he record [was] silent as to obviously relevant facts relating to the nature of the [defendant's] business and its method of operation." 869 P.2d 1014, 1017 (Wash. 1994). At most, the record reflected that Ingersoll was walking in the common area of the defendant's mall when she slipped and fell and that "she observed a smear on the floor" when she stood up, which she vaguely attributed to melted ice cream from a vendor in the mall. *See id*. at 1014–15. The record also disclosed at least one food-drink vendor in the mall and noted that "some patrons carry the products to benches for consumption," thus suggesting that patrons might spill their food products in the process. *Id*. at 1016. Even then, this "minimal line of proof" was insufficient to invoke the *Pimentel* exception, particularly in light of the types of evidence absent from the record.[5] *Id*. at 1016–17.

The case at bar is analogous to *Tavai* and *Ingersoll* but not *Johnson*. Here, Plaintiff relies on a single piece of evidence to demonstrate foreseeability—Defendant's "daily"[6] parking lot inspections. (*See* Dkt. No. 26 at 3; *see also* Dkt. No. 21 at 19–20) (inspection report). This morsel of evidence is insufficient to show that Defendant's operations are such that any dangerous sand or gravel in the parking lot—assuming it even existed—was reasonably foreseeable. Indeed, as in *Tavai* and *Ingersoll* but unlike *Johnson*, Plaintiff fails to present

---

[5] For instance, there was no proof of:
>  (1) the actual number of food-drink vendors, other types of vendors, or what products they sell; (2) the location of such vendors in relation to the location of the fall; (3) the methods of operation of the various vendors, particularly whether the products and their consumption resulted in debris or substances on the floor; (4) whether patrons routinely brought products from outside the Mall into the Mall (alleged by plaintiff, but completely unsupported factually); (5) the historical experience of slip and fall incidents prior to this event.

*Id*. at 1017.

[6] Of note, Plaintiff argues that the inspections are "daily" but does not offer any evidence to support this contention. (Dkt. No. 26 at 3.) In turn, the Court does not see any mention of a "daily" nature to Defendant's inspections in the inspection report. (*See* Dkt. No. 21 at 19–20.)

ORDER
C24-0470-JCC
PAGE - 8

evidence of a history of falls in the corral area. *See* 307 P.3d at 816; 869 P.2d at 1017; *cf.* 486 P.3d at 135. Plaintiff also neglects to present any evidence that sand or gravel in the shopping cart corral is an "inherent mode" of Defendant's operation so as to render a slip on such substance reasonably foreseeable. *Cf. Johnson*, 486 P.3d at 135 (store clerk testified that customers entering store on a rainy day is an inherent mode of the business's operation, such that it would be reasonably foreseeable for the floor to be wet on a rainy day). And where Defendant argues the absence of such material facts, it is Plaintiff's burden to counter with evidence that raises a genuine dispute as to those missing facts. *See Lujan*, 497 U.S. at 888–89 (courts will not presume "missing facts").

Plaintiff's sole reliance on *Galassi* is similarly unconvincing if not entirely misguided. (*See* Dkt. No. 26 at 2–3.) Importantly, *Galassi* is a "falling merchandise" case, which raises factual issues different from those in slip and fall cases. 565 P.3d at 125. The *Galassi* court noted as much when pointing to the factual showings necessary to apply the reasonable foreseeability exception in slip and fall cases—*i.e.,* "what the injury-causing substance actually was" and how it "ended up . . . in the location where the plaintiff slipped." *Id*. As noted, Plaintiff has made the minimal showing necessary to raise a genuine dispute that sand or gravel caused her injury, but she makes no effort to explain how the sand or gravel ended up in the shopping cart corral. (*See* Dkt. No. 26 at 2–3.) Defendants, in turn, maintain that Plaintiff has no evidence of any hazardous substance at all, let alone how it may have ended up in the location where Plaintiff fell. (*See* Dkt. Nos. 20 at 8–9, 28 at 6.) And again, it is Plaintiff's burden to at least try to present a grain of evidence when Defendant's entire summary judgment argument hinges on the lack thereof.

Perhaps Plaintiff's only convincing analogy is that the defendant in *Galassi* conducted "daily safety walks" and "immediately correct[ed] unsafe conditions such as . . . improperly put away items on display shelves," 565 P.3d at 126, just as Defendant here conducts routine inspections of the parking lot area,[7] (Dkt. No. 21 at 19). However, in *Galassi*, the record

---

[7] Again, the Court will not presume that the inspections are daily where Plaintiff neglects to present such evidence and the record does not otherwise reflect it.

reflected a particular and foreseeable hazard through the defendant's very specific policy of checking the display shelves for improperly stored merchandise, *see* 565 P.3d at 126, whereas Plaintiff here only references a vague policy of generally inspecting the parking lot, (*see* Dkt. No. 26 at 3). This is not to say that a plaintiff must always point to a specific policy to demonstrate foreseeability, but the lack thereof is certainly convincing evidence that an unsafe condition is *not* reasonably foreseeable. That is, that Defendant does not have a specific policy of inspecting the corral—especially when it *does* have a very specific policy of checking the "entire front apron/sidewalk," (Dkt. No. 21 at 9)—suggests that it is not reasonably foreseeable for an unsafe condition to exist in the corral area. The *Galassi* court also cited to other pieces of evidence, such as a photograph of the display shelf that reflected the defendant's practice of displaying the falling merchandise on high shelves, and even then, the court only found such evidence sufficient to deny the defendant's summary judgment motion; it did not treat it as proof that the reasonable foreseeability exception applied. 565 P.3d at 126–28. Plaintiff is sorely lacking in such corroborating evidence.

Ultimately, Plaintiff's evidentiary showing is simply too thin compared to that even in *Tavai* and *Ingersoll*. Accordingly, Plaintiff cannot demonstrate a genuine dispute as to the applicability of the reasonable foreseeability exception. And as noted, Plaintiff does not dispute the lack of evidence to demonstrate actual or constructive notice. In turn, Defendant has sufficiently shown that Plaintiff cannot satisfy the proximate cause element. Defendant is therefore entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

**III.    CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment (Dkt. No. 20) and DISMISSES Plaintiff's claims with prejudice.

//

//

//

DATED this 15th day of April 2025.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
C24-0470-JCC
PAGE - 11